UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Thomas Hunt, et al., | : | |
| Plaintiffs, | : | **Hon. Joseph H. Rodriguez** |
| v. | : | Civil Action No. 12-6887 |
| Borough of Wildwood Crest, et. al., | : | **Opinion** |
| Defendants. | : | |

This matter comes before the Court on Objections and Appeal pursuant to Local Civil Rule 72.1(a) of Plaintiffs Thomas and Barbara Hunt (the "Hunts"). The Hunts object to and appeal from the Order disqualifying their counsel, Michelle Douglass, Esquire, issued by Magistrate Judge Donio on December 14, 2015. [Dkt. No. 98]. The Court has considered the written submissions of the parties, including the supplemental briefing, and the arguments advanced at the hearing on this matter, which occurred on July 6, 2016. For the reasons that follow, Magistrate Judge Donio's December 14, 2015 Order is affirmed.

**I. Background**

Because the parties and relevant non-parties are intimately familiar with this case, an exhaustive recitation of the facts and procedural history is

unnecessary.  The facts germane to the Court's analysis are as follows. Plaintiffs Thomas and Barbara Hunt instituted an adverse employment action in the Superior Court of New Jersey in May, 2012. (See, Defendant's Mot. To Disqualify, Ex. A, [Dkt. No. 67-2]).  In that Complaint, Thomas Hunt, a former Wildwood Crest Police Sergeant, alleges that the Borough of Wildwood Crest, Mayor Carl Groon, Chief of Police Thomas DePaul, Captain David Mayer, and Lt. Michael Hawthorne retaliated against him and ultimately caused his termination as a result of Hunt's union activities.

    The Hunts' State Court complaint was dismissed and the Plaintiffs filed an identical action in this Court and have subsequently amended several times.  In the present matter filed in this Court, however, there is no dispute that Hawthorne was dropped from the caption as a Defendant, but the verbatim allegations made against him remain in the body of the Complaint. (See, id.; Second Amended Complaint [Dkt. No. 59] (erroneously styled as First Amended Complaint)).  The relevant allegations focus on Hawthorne's character and paint him as a fraudulent and malicious bully who threatened physical harm to Thomas Hunt and his family. (See, id.).  In addition, Hawthorne is alleged to have conspired against Hunt and caused the dual harms of retaliation and termination.[1]

---

[1] For example, Hawthorne is alleged to have "attempted to belittle" and "threaten[]" Hunt, "maliciously and

In or around April 2015, disqualified counsel Michelle Douglass represented Michael Hawthorne as an interested party in an Open Public Record Act case that, although not directly related to Hunt's underlying case, involved documents that relate to allegations Hawthorne made against Defendants Chief DePaul and Captain Mayer, among others. Hawthorne's complaints against DePaul and Mayer were investigated by the Cape May County Prosecutor. In a twist, the Prosecutor concluded Hawthorne's claims were manufactured, stating Hawthorne was "deceitful" and "demonstrated dishonesty and a lack of integrity." (See Def. Supp. Br., Ex B.) These conclusions prompted the prosecutor to issue a Brady letter to every defendant in a criminal case predicated upon an arrest involving Hawthorne.[2] (Id.).

In the meantime, Hawthorne provided to Hunt helpful information as to the authenticity of certain documents relevant to this litigation. (Id.) As plead in the Second Amended Complaint, Hunt alleged the falsification of a memo dated January 23, 2010 which contains the name of Captain Bradley as the author. The Complaint alleges that "the memo which is dated

---

purposefully" refuse to accept certain equipment from Hunt, conducted himself in a "outrageous and reprehensible" manner, and acted "despicably and in a retaliatory vengeance against Hunt[.]" (Sec. Am. Cmpl. at ¶¶ 68, 129, 131. Hawthorne is also alleged to have conspired with others "to charge Hunt with manufactured disciplinary charges." Id. at ¶¶ 105, 107).

[2] See Brady v. Maryland, 373 U.S. 83 (1963) (requiring disclosure of exculpatory evidence).

January 23, 2010 was actually created in 2011 in preparation for a disciplinary hearing against Hunt. It was intended to be used as (false) evidence in the hearing." (Sec. Am. Cmpl., ¶ 45). Hunt claims he learned of the memo though an investigation initiated by Hawthorne against the Cape May County Prosecutor's Office and alleges that Hawthorne "reported that the memo was fake." (Id. at ¶ 49). The timing of the filing of the Second Amended Complaint and Attorney Douglass' representation of Hawthorne in the OPRA matter intersect.

In addition, based upon the prosecutor's disclosures in the Brady letter, Hawthorne recently filed a civil suit against Cape May County claiming, inter alia, that his employment with the Borough of Wildwood Crest was adversely impacted by the prosecutor's actions. There is much confusion in the record related to Ms. Douglass' involvement in the preparation of Hawthorne's civil action against Cape May County.

On the heels of the filing of the Second Amended Complaint, the Defendants, alleging several ethical violations, filed a motion to disqualify Ms. Douglass from continuing to represent the Hunts in the present case because of her representation of Hawthorne. Magistrate Donio heard oral argument on the motion on July 27, 2015. (Dkt. No. 87). On December 14, 2015, in relevant part, Magistrate Donio ruled that Ms. Douglass'

4

representation of Hawthorne and Hunt constituted an impermissible concurrent conflict, in violation of N.J. Rules of Prof'l Conduct R. 1.7 (a).[3] The conclusion was predicated upon Ms. Douglass' representation during oral argument that she was currently representing Hawthorne and the fact that Ms. Douglass' certification on the motion does not expressly state that the representation had concluded at that time. (Magistrate Order, p. 13 [Dkt. No. 98]; see also Hawthorne Cert. [Dkt. No. 68-2]).

The magistrate judge found that, pursuant to RPC 1.7 (b) (1), both Hawthorne and the Hunts waived the conflict. However, the court concluded that Douglass' assurance that she could "provide competent and diligent representation to" both Hunt and Hawthorne was not objectively reasonable pursuant to RPC 1.7 (b) (2). (Magistrate Order, p. 21 [Dkt. No. 98]). As a result, Douglass' representation of Hawthorne and Hunt created a non-waivable concurrent conflict and counsel was disqualified from representing the Hunts in the present case.[4] (Id. at pp. 21-22).

---

[3] At the time of the magistrate's Order, Hawthorne had not yet filed the civil action against Cape May County; it was filed on April 14, 2016.

[4] RPC 1.7 governs conflicts of interest and provides in relevant part:
    (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
        (1) the representation of one client will be directly adverse to another client; or
        (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
    (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
        (1) each affected client gives informed consent, confirmed in writing, after full disclosure

## II. Standard of Review

This Court reviews decisions on non-dispositive matters by a magistrate judge under the "clearly erroneous or contrary to law" standard.[5]  See Andrews v. Goodyear Tire & Rubber Co., 191 F.R.D. 59, 67 (D.N.J. 2000) (citing 28 U.S.C. § 636(b)(1)(A) (West 1999)); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205 (D.N.J. 1997); see also Fed. R. Civ. P. 72; L. Civ. R. 72.1(c)(1)(A).  In this regard, "the magistrate judge is accorded wide discretion." Miller v. Beneficial Mgmt. Corp., 844 F. Supp. 990, 997 (D.N.J. 1993) (citing NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992)).  A magistrate judge's decision is clearly erroneous "when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.' " See Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citing Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) quoting United States v. Gypsum Co., 333 U.S. 364, 395 (1948)).

---

and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
    (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client[.]

N.J. Rules Prof'l Conduct R. 1.7
[5] Motions for disqualification are generally non-dispositive. Essex Chemical Corp. v. Hartford Accident and Indemnity Co, 993 F.Supp. 241, 245-46 (D.N.J. 1998).

The Third Circuit interprets this standard "to mean that the appellate court must accept the factual determination of the fact finder unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " Haines v. Ligget Group Inc., 975 F.2d 81, 92 (3d Cir. 1992) (quoting Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972)). As a result, under the clearly erroneous standard, "the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently." Bowen v. Parking Authority of City of Camden, 2002 WL 1754493, *3 (D.N.J. Jul. 30, 2002); Andrews, 191 F.R.D. at 68.

A magistrate judge's decision is contrary to law when he or she has "misinterpreted or misapplied applicable law." Kounelis, 529 F. Supp. 2d at 518 (citing Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). The burden of demonstrating clear error rests with the appealing party. Kounelis, 529 F. Supp. 2d at 518.

"Finally, under the clearly erroneous standard, 'a district court may not consider any evidence which was not presented to the magistrate judge.' " Celgene Corp. v. Natco Pharma Ltd., No. CIV.A. 10-5197 SDW,

7

2015 WL 4138982, at *2 (D.N.J. July 9, 2015) (quoting Lithuanian, 177 F.R.D. at 213 (citing Haines, 975 F.2d at 92)).

The Court has considered the arguments of the parties and agrees with the factual findings and reasoning of Magistrate Donio, as set forth in the December 14, 2015 Order. Counsel has failed to carry her burden of showing that the magistrate judge's decision was clearly erroneous or contrary to law.[6] Plaintiffs' appeal is denied and counsel remains disqualified.

### III. Discussion

Plaintiffs have failed to meet their burden on appeal. First, Magistrate Donio conducted a careful and thorough review of the facts balanced against appropriate legal considerations. At the time of the hearing and the decision on the motion to disqualify, the record contained evidence that Ms. Douglass was concurrently representing Hawthorne and the Hunts. During oral argument, counsel stated:

---

[6] In her moving papers on appeal, counsel argues that a de novo standard should apply to Magistrate Donio's erroneous legal conclusions. Review of the application law is plenary. Lithuanian Commerce Corp., 177 F.R.D. at 214. However, the bulk of Counsel's arguments attack the factual basis of Magistrate Donio's legal conclusions. In addition, the Court rejects Counsel's argument that Magistrate Donio failed to consider certain factors set forth in Wyeth v. Abbott Labs., 692 F. Supp. 2d 453, 459 (D.N.J. 2010). The Court finds that those considerations were accounted for in pages 8-10 and 13-14 of the December 14, 2015 Order. (See Dkt. No. 98). Moreover, Magistrate Donio's reliance on In re Cendant Corp. Securities Litigation, 124 F.Supp. 2d 235, 249 (D.N.J. 2000) and Carlyle Towers Condo. Ass'n v. Crossland Sav., 944 F. Supp. 341, 345 (D.N.J. 1996) establish the proper framework for the magistrate judge's decision.

> Right now, Your Honor, the scope of my representation was on an open public records request, only, at that time and that was heard before Judge Johnson. Now, the Borough, as well as the county prosecutor has appealed his decision, as well. And, after that, Mr. Hawthorne and I discussed suing the Cape May County Prosecutor.

(July 27, 2015 Hearing Transcript., p. 35 [Dkt. No. 106]; Defendants' Supp. Br., Ex. D.)

The scope of Douglass' representation of Hawthorne is the subject of much confusion; most of the confusion having been created by Douglass herself. See Wyeth, 692 F. Supp. 2d at 459. Douglass agreed during oral argument on July 6, 2016 that Hawthorne was still her client in another matter. (July 6, 2016 Hearing Transcript [Dkt. No. 109], Defendants' Supp. Br. Ex. E. p. 14.) During the hearing counsel also stated that she "never contemplated" suing the Borough of Wildwood Crest or Cape May County on behalf of Hawthorne. (Id.) However, during the hearing in front of Magistrate Donio, Douglass stated that "Mr. Hawthorne and I discussed suing the Cape May County Prosecutor." (July 27, 2015 Hearing Transcript., p. 35 [Dkt. No. 106]; Defendants' Supp. Br., Ex. D.) This assertion is also in direct conflict with the Certification of Hawthorne submitted by Douglass in support of her L. Civ. R. 72(a) appeal. In that Certification, Hawthorne states:

> Ms. Douglass is the best attorney to represent me given the fact that she also represents Thomas Hunt in this federal case. Ms. Douglass understands this convoluted history and is

9

> familiar with the parties. I have asked her to join my case with that of Hunt's case since the facts are overlapping. . . .Hunt's case and mine are also similar in that I too began to experience a pattern of retaliatory disciplinary actions and was threatened with having to submit to a psychiatric fitness for duty evaluation as an abusive retaliatory tactic[.]

(Hawthorne Cert., ¶¶ 19-20, [Dkt. No. 68-2].

Although the Court may not consider new evidence on appeal, the above inconsistencies highlight the factual difficulties presented to the magistrate judge, which continue to frustrate the efforts to evaluate the nature of the relationships at play on this appeal.  Magistrate Donio's finding that Douglass' representation offends RPC 1.7(a) is affirmed.  The fact that Douglass no longer represents Hawthorne, notwithstanding the confusion surrounding the depth of her involvement in his civil case against Cape May County, does not rehabilitate her argument. RPC 1.7 (a) (2) is applicable to former clients.[7]

---

[7] See In re Cendant Corp. Sec. Litig., 124 F. Supp. 2d at 242 (citing State v. Catanoso, 222 N.J. Super. 641, 643-45, 648, 537 A.2d 794 (Law Div. 1987) (former attorney-client relationship between lawyer and government's witness prohibited lawyer from representing current client, because lawyer would be "an adversary to his former client" and to "act[ ] as a zealous advocate for his current client …," [the lawyer] must breach the duty of loyalty that he owes to his former client); State v. Loyal, 164 N.J. 418, 429, 753 A.2d 1073 (2000) (lawyer who represented a criminal defendant was disqualified because the attorney's representation of one of the government's main witnesses against his client in the past created an appearance of impropriety); In re Cohn, 46 N.J. 202, 212, 216 A.2d 1, 5 (1966) (attorney's concurrent representation of a client who was a witness against another client in a separate proceeding "placed him in a position where he could receive information from each client which could be used to the advantage of the other. Clearly there were conflicts of interest between [the two client] which … would make it almost impossible to adequately represent both parties in their respective proceedings.") .

The Court also affirms Magistrate Donio's conclusions related to the reasonableness of counsel's claims that she could properly represent both Hunt and Hawthorne at Hunt's trial, pursuant to RPC 1.7 (b) (2). During oral argument on July 6, 2016, counsel challenged the factual basis for the magistrate's decision. Based on the facts before the court at the time, the magistrate judge properly concluded that the concurrent conflict, even though waived, constitutes an impermissible conflict. To arrive at this conclusion, Magistrate Donio examined the nature of Hawthorne's involvement as a witness in the Hunts' case and concluded that counsel did not appreciate the fact that in pursuing evidence on behalf of the Hunts, she would either need to impeach Hawthorne or proceed in a manner that undermines the credibility of the Hunts' allegations.

> Specifically at trial, Ms. Douglass would be required to elicit testimony from Mr. Hawthorne that either supports Plaintiff Hunt's allegations at the expense of adversely impacting Mr. Hawthorne, or that challenges or rebuts Plaintiffs' allegations, thereby harming Plaintiff Hunt's case.
>
> . . .
>
> As Defendants assert, the inconsistencies between the proposed amended complaint and the amended complaint implicates the credibility of Plaintiff Hunt, which could be perceived as benefitting Mr. Hawthorne.

(Magistrate Order, pp. 17, 18 [Dkt. No. 98]; Defendants' Supp. Br., Ex. D).

This Court agreed with Magistrate Donio's concern when it questioned counsel about the potential dangers associated with presenting Hawthorne as a witness:

> If you look at the history that goes back to the confusion, it was existing at the time. Words like "malicious," "untruthful," "revengeful." If they were used and now he's confronted with those words, in order to support what he's saying, would it put you in some conflict with the Hawthorne's as their attorney?
>
> . . .
>
> And he can be cross examined on the basis that even the Hunts thought that he was a liar…. It may require an aggressive approach by you in order to protect the Hunts and put you in the situation where you have to take sides.

(Transcript July 6, 2016 Hearing; Defendants' Ex. E, pp. 15:8-13; 16:18-21).

With respect to Hawthorne, counsel stated on the record on July 6, 2016 that Hawthorne is Hunts' "no. 1 star witness with respect to that … forged document." (Id. at p. 10:10-12). In addition, the Hunts attempt to backtrack on all of the allegations made against Hawthorne because they "now know that they are inaccurate in our beliefs."[8] (Id. at 23-25).

---

[8] Magistrate Donio rejected Counsel's attempt to re-characterization the claims as proof that a conflict does not exist and questioned Counsel's appreciation of the conflict. In addition, Magistrate Donio denied Plaintiffs' Motion to Amend the Complaint to withdraw all reference to Hawthorne as futile on the issue of conflict. "[E]ven if Plaintiffs

As a result, the credibility of both Hawthorne and Hunt will be at issue and Counsel will be in the precarious position of attempting to rehabilitate the credibility of one party to perhaps the detriment of the other.  Counsel's inability to appreciate the conflict compels the Court to affirm Magistrate Donio's Order disqualifying her from the case.

"Motions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.' " Carlyle Towers Condo. Ass'n Inc., 944 F. Supp. at 345 (quoting Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099 1114 (D.N.J. 1993)).  In this case, the impacted parties have consented and expressed their desire to continue with Ms. Douglass.  The Court's decision considers these requests, but against the present factual backdrop must affirm disqualification.

Here, counsel drafted a scathing Complaint against the Defendants, including Hawthorne.  Then, Hawthorne transitioned from Defendant to star witness of the Plaintiffs.[9]  In the interim, Counsel for Plaintiffs

---

were permitted to amend their complaint to remove references to Mr. Hawthorne, a concurrent conflict would nevertheless exist under RPC 1.7 (a) (2)." (Magistrate Order, pp. 17, 18 [Dkt. No. 98]; Defendants' Supp. Br., Ex. D).

[9] Defendants challenge Counsel's assertion that Hawthorne, although a previous defendant, was never exposed to confidential litigation information. ( See Letter dated June 15, 2015, Ex. 1, Affidavit of Joseph Scott and Ex. 2, Affidavit of William Blaney. [Dkt. No. 76]).  Because Hawthorne was a named defendant and in the litigation control group for the administrative and civil claims initiated by Hunt and given the confusion surrounding his intent to sue the Borough of Wildwood Crest, Defendants would be prejudiced by Counsel's continued representation of Hunt.

represented Hawthorne in an action that involved documents related to Hawthorne's allegations of untoward and criminal conduct by some of the very Defendants' in this case.  This unique and tenuous sequence not only presents credibility issue challenges for Counsel, but also serves to create the appearance of impropriety. The Magistrate Judge's December 14, 2015 Order is not clearly erroneous or contrary to law and will be affirmed.

## IV. Conclusion

For the foregoing reasons, the magistrate judge is affirmed. An appropriate Order shall issue.


Dated: September 29, 2016


                s/ Joseph H. Rodriguez
                Hon. Joseph H. Rodriguez,
                UNITED STATES DISTRICT JUDGE